676 So.2d 1187 (1996)
In re GEORGIA GULF CORPORATION and Robert Harrison and Kenneth E. Samaha and Sales Tax, Inc.
No. 95 CA 1694.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*1188 Steven L. Loeb, Murphy Foster, Baton Rouge, for AppellantGeorgia Gulf Corporation and Robert Harrison.
B. Michael Grissom, Baton Rouge, for AppellantKenneth E. Samaha and Sales Tax, Inc.
R. Gray Sexton, Maris LeBlanc McCrory, Patricia H. Douglas, Baton Rouge, for AppelleeCommission on Ethics for Public Employees.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
This matter arises out of a judicial appeal from an administrative decision by the Commission on Ethics for Public Employees (Ethics Commission). Among other issues raised on appeal, appellants challenge the administrative proceeding on the constitutional grounds of a due process violation, which prohibited them from receiving a fair administrative hearing.[1] This court agrees that the parties were not afforded a fair tribunal in compliance with the standards of procedural due process.

Factual Background and Administrative Opinion
Kenneth Samaha was an employee with the Department of Revenue and Taxation from February, 1982, until June 12, 1992. During 1992, he served in the capacity of revenue senior agent. His duties encompassed supervision of agency audits, including one of Georgia Gulf Corporation ("Georgia Gulf"), which commenced on May 12, 1992. Shortly thereafter, on May 21, 1992, Mr. Samaha notified the department's audit manager that he would be officially resigning, effective June 12, 1992. After resigning on the twelfth of June, Mr. Samaha entered into a written agreement on June 22, 1992, between Sales Tax, Inc., the wholly owned corporation that he was forming, and Georgia Gulf. Sales Tax, Inc. agreed to provide professional assistance to Georgia Gulf to obtain reimbursements of overpayments of state and parish taxes as a result of public audits.
*1189 The Ethics Commission conducted an investigation of, and ultimately filed charges against, Mr. Samaha, Sales Tax, Inc., and Georgia Gulf, based upon the following possible violations of the Code of Governmental Ethics:
That Kenneth Samaha, former Revenue Senior Agent with the Department of Revenue and Taxation, may have violated Section 1121 A of the Louisiana Code of Governmental Ethics (La.R.S. 42:1121A) by rendering compensated assistance to Georgia Gulf Corporation in connection with a sales and use tax audit conducted by the Department of Revenue and Taxation.
That Kenneth Samaha may have violated Section 1112B(4) of the Louisiana Code of Governmental Ethics (La.R.S. 42:1112B(4)) by virtue of his participation through the Department of Revenue and Taxation in an audit of Georgia Gulf Corporation at a time when he communicated and/or negotiated prospective employment with Robert Harrison, Director of Taxes for Georgia Gulf Corporation.
That Sales Tax, Inc., a corporation for which Kenneth Samaha serves as an officer and/or employee, may have violated Section 1121C of the Louisiana Code of Governmental Ethics (La.R.S. 42:1121C) by rendering compensated assistance to Georgia Gulf Corporation in connection with a sales and use tax audit conducted by the Department of Revenue and Taxation in which Kenneth Samaha participated as a Revenue Senior Agent with the Department of Revenue and Taxation.
That Georgia Gulf Corporation may have violated Section 1117 of the Louisiana Code of Governmental Ethics (La.R.S. 42:1117) by compensating Mr. Kenneth Samaha, (through Sales Tax, Inc.), a former employee of the Department of Revenue & Taxation, through payments exceeding $50,000, made pursuant to an agreement dated June 22, 1992, for services rendered to Georgia Gulf Corporation which payments of compensation Mr. Samaha (and Sales Tax, Inc.) may have been prohibited from receiving under Section 1121 of the Code of Governmental Ethics (La.R.S. 42:1121).
The Ethics Commission concluded the hearing with a determination that Kenneth Samaha and Sales Tax, Inc. violated Sections 1121A and C, and 1112B(4) of the Code of Governmental Ethics. The Commission additionally opined that there was an intent to conduct activities that Mr. Samaha and Sales Tax, Inc. knew were in violation of the Code of Governmental Ethics. A fine of $5,000 per violation resulted in a total fine of $10,000 against Samaha/Sales Tax, Inc. Moreover, Mr. Samaha was prohibited from assisting a client, for compensation, before the Department of Revenue and Taxation for 5 years, pursuant to Section 1153 of the Code of Governmental Ethics.
Georgia Gulf was deemed to have violated section 1117 of the Code of Governmental Ethics on at least two different occasions via illegal payments to Mr. Samaha through Sales Tax, Inc.. The Commission also determined that Georgia Gulf intended to conduct activities that it knew were in violation of the Code of Ethics. A fine of $10,000 was imposed against Georgia Gulf in accordance with Section 1153 of the Code of Governmental Ethics addressing "other person."
Finally, Robert Harrison, the representative who negotiated the transactions on behalf of Georgia Gulf with Mr. Samaha, was prohibited from entering into transactions for Georgia Gulf with the Department of Revenue and Taxation for 5 years, under the aegis of Section 1151B of the Code of Governmental Ethics dealing with "other person".
On May 26, 1995, Georgia Gulf and Robert Harrison filed an Application for Suspensive Appeal, which was granted as a devolutive appeal on May 30, 1995. A request for a rehearing and a stay of enforcement of the opinion pending official signature, was sought on behalf of Samaha and Sales Tax, Inc. On June 15, 1995, an Application for a Suspensive Appeal was filed on behalf of Mr. Samaha and Sales Tax, Inc. The Ethics Commission granted a devolutive appeal on June 20, 1995. On June 16, 1995, Georgia Gulf and Robert Harrison filed a Motion to Stay Execution of the Decision of the Ethics Body, which this court granted on June 29, 1995. On June 16, 1995, Georgia Gulf and Robert Harrison filed a Motion to Stay Execution *1190 of the Decision of the Ethics Body, which this court granted on June 29, 1995. Appellants, Kenneth Samaha and Sales Tax, Inc., also filed a Motion to Stay Execution of the Decision of the Ethics Body, which this court granted on August 14, 1995.

Due Process
Appellants raise the constitutional issue of due process. Specifically, appellants challenge R. Gray Sexton's dual participation on behalf of the Ethics Commission. Mr. Sexton was the Executive Secretary, or the chief administrative and executive officer appointed by the Ethics Commission. He additionally served as Assistant Attorney General or counsel to the Commission. La.R.S. 42:1134(2). Our determination of a violation of appellants' due process rights in the administrative hearing pretermits the necessity of addressing the various other issues presented in the assignments of error by Kenneth Samaha, Sales Tax, Inc., Georgia Gulf, and Robert Harrison. We express no opinion as to the merits, the findings or the punishment.
The test to be employed when scrutinizing the investigative and judicial relationship within an agency, relative to the parameters of due process, was established in the United States Supreme Court case, Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In that matter, the Wisconsin Medical Examining Board had investigated a possible statutory infringement by a dentist. Thereafter, it held an adversarial hearing on the matter of possible suspension of his license. The combination of investigative and adjudicative roles was procedurally challenged by the defendant.
The United States Supreme Court differentiated between the due process standard to be applied in administrative proceedings and other tribunals. In a pronouncement that has been frequently referenced thereafter, the Court dictated the following:
[A]n unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
Withrow v. Larkin, 421 U.S. at 46, 95 S.Ct. at 1464.
Allen v. State Board of Dentistry, 543 So.2d 908 (La.1989), followed the Withrow decision, and contained a distinguishable factual scenario. In Allen, 543 So.2d at 913, the set of circumstances entailed a combination of prosecutorial and adjudicative roles, as opposed to joint investigative and adjudicative functions. The Louisiana Supreme Court in Allen, id, observed that the prosecutor was not only an advocate before the Louisiana Board of Dentistry in charges against a dentist, but additionally, the prosecutor had drafted the entirety of the findings and conclusions. Although the prosecutor did not play any role in the Board of Dentistry committee's decision on the ultimate issue of culpability, or fix the penalty assessed, the Louisiana Supreme Court reversed the appellate finding that the requirements of due process had been met. The Court pointed out that the Board's attorney had investigated the charges, served as prosecutor for the Board, and drafted the committee's findings and conclusions. It found that since the prosecutor's role in the decision process began before the adjudicators' task was completed, the accused party's right to a neutral adjudicator had been denied. In cogent language, Justice Cole, speaking for the Court, noted that
Wootan was not merely a scribe; he became the main fact finder. The detailed findings and credibility judgments which were offered in support of the committee's final decision and which play such a critical role in meaningful judicial review were simply not those of the neutral hearing committee. They were the secret product of an advocate.... If the committee thought the assistance of an attorney was desirable [to draft their findings of fact in "legal language"], it should have contacted *1191 an independent counsel, not the prosecutor, and given this attorney the reasons why the committee reached the conclusions it did. This procedure would avoid even the appearance of impropriety[.]
Allen v. State Board of Dentistry, 543 So.2d at 913.
In the case at hand, Mr. Sexton served as investigator, prosecutor, and author of the fourteen page draft of the administrative decision. The draft was ultimately signed and adopted essentially verbatim by the Ethics Commission. Although this court does not find that the dual position of prosecutor and Executive Secretary for the Ethics Commission per se would be violative of an investigated party's administrative due process rights, Mr. Sexton's combination of prosecutorial and adjudicatory roles, that was exhibited throughout the subject hearing and administrative determination, presented an unacceptable threat to the accuseds' right to a fair hearing.
It should be clarified that the facts in the matter before us are somewhat distinguishable from those of the Allen case. However, the factual distinction does not elevate the proceeding to a level that comports with the due process mandates. After Mr. Sexton had submitted the proposed basis for the commission's ruling, he forwarded letters to the appellants, providing them an opportunity to submit written reports to him in the event that they wished to assert any perceived errors in the proposed decision. At the time of the transmittal of that correspondence, he was acting on behalf of the Ethics Commission. He additionally apprised the parties of an opportunity to present reasons as to why a rehearing should have been granted in the matter.
Thus, the pivotal determination becomes whether the opportunity to submit an argument for changes in the prosecutor's proposed reasons for the decision and the prosecutor's affording the parties an opportunity for a rehearing, adequately cures the due process infirmity. The communication by and between the appellants and the commission, transpired entirely through Mr. Sexton, as Executive Secretary for the Ethics Commission and/or in-house counsel. Although appellants in the matter before us were technically provided with an opportunity to present comments and/or contended errors in the proposed draft of the opinion to be signed by the Ethics Commission, and to request a rehearing, even that portion was orchestrated by, and submitted to, Mr. Sexton. Mr. Sexton's roles as the prosecutor and his involvement in formulating the Ethics Commission's findings and conclusions, were so intimately intertwined as to make them practically interchangeable. This commingling of separate and independent functions is the antithesis of the very purpose of the due process goals.
It was also aptly noted in the Allen case that the combination of the separate roles of prosecutor and adjudicator effectively renders meaningful judicial review impossible. Allen, 543 So.2d at 915. A court's review of an agency decision is limited to the grounds listed in La.R.S. 49:964(G). If the Ethics Commission merely adopts the findings of the prosecutor, it becomes impossible to analyze the development of the matter and the determinations on behalf of the agency to assess whether the Ethics Commission acted in such a manner that would require reversal under any ground listed in La.R.S. 49:964(G). Allen, 543 So.2d at 915. This is particularly pertinent when credibility determinations are involved.
Our previous decision in In re Beychok, 484 So.2d 912 (La.App. 1st Cir.), reversed on other grounds, 495 So.2d 1278 (La.1986) has been de facto reversed in light of the subsequent Louisiana Supreme Court holding in Allen. Mr. Sexton's combined role as prosecutor, and his continued control of the case throughout the fact finding and adjudicative process, critically impinged the accuseds' right to a neutral adjudicator. The seriousness of the error in the administrative process leaves this court no alternative but to remand this matter to the Ethics Commission for a new hearing on the existing record that comports with the requirements of due process. Both parties shall have the opportunity to offer supplemental evidence. Costs associated with this appeal are assessed to Georgia Gulf Corporation.
REVERSED AND REMANDED.
GONZALES, J., concurs and assigns additional reasons.
*1192 GONZALES, Judge, concurring.
I concur in the finding of my colleagues in this matter and add the following comments. I believe that the record in this matter contains sufficient evidence of serious violations of the Code of Governmental Ethics by the corporations and individual involved. I also believe that, under the facts of this case, the fines imposed were appropriate.
However, because of the procedure utilized in this matter, the entities subject to the jurisdiction of the Ethics Commission were deprived of due process. When the findings and conclusions of the trier of fact are not really their own, but are those of an advocate on one side of the case, the opponent has been denied some due process. This failure of due process results from either ex parte communications by the advocate with the fact-finder, or from the fact-finder's failure to truly exercise the role of an impartial and independent adjudicator. The Ethics Commission concedes in brief that it is governed by, and subject to, the provisions of the Administrative Procedure Act. Section 960(A) of the APA provides:
Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a case of adjudication noticed and docketed for hearing shall not communicate, directly or indirectly, in connection with any issue of fact or law, with any party or his representative, or with any officer, employee, or agent engaged in the performance of investigative, prosecuting, or advocating functions, except upon notice and opportunity for all parties to participate.
When an administrative agency investigates, and then ultimately charges and fines individuals or corporations subject to its jurisdiction for violations of the Code of Governmental Ethics, the staff members of that agency are parties to the proceeding, and thus, ex parte consultations with the fact-finder are prohibited.
Some administrative agencies with enforcement functions in this state seem to believe that they are exempt from the provisions of § 960. This unfortunate attitude evidences a lack of understanding of the fundamental concepts of fairness and due process guaranteed by both the state and federal constitution. It is particularly egregious in the case sub judice because § 960 is basically an ethical rule imposed on administrative agencies, and where the administrative agency in question is charged with the enforcement of ethical considerations, it should have a greater appreciation of such principles.
NOTES
[1] Appellee objects to this court's review of the due process issue on the basis that it is an unassigned error. We employ our discretionary right to review this issue because "... the interest of justice clearly requires otherwise." Rule 1-3, Uniform Rules of Louisiana Courts of Appeal.